UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SCOTT E. ELDREDGE,            :      CIVIL NO: 4:13-CV-01254
                             :
            Plaintiff         :
                             :      (Judge Brann)
      v.                      :
                             :      (Magistrate Judge Schwab)
MICHAEL FIORENTINO,          :
                             :
            Defendant         :
                             :

## REPORT AND RECOMMENDATION

### I.  Introduction.

The plaintiff claims that the defendant violated his substantive due process

rights by improperly denying him a severance payment.   Because the plaintiff's

interest in the severance payment is not the type of fundamental property interest

protected by the substantive component of the Due Process Clause, the complaint

fails to state a claim upon which relief can be granted.  Further, because the

plaintiff did not have a property interest in the severance payment protected by the

procedural component of the Due Process Clause, we recommend that he not be

granted leave to amend the complaint to raise a procedural due process claim.

## II. Background and Procedural History.

Eldredge began this case by filing a complaint naming Michael Fiorentino, the President of Lock Haven University, as the defendant. Eldredge, who was employed by Lock Haven University as a Director of Web Development, alleges that in early 2013 he was advised that his position was being eliminated and he was being furloughed. He was told that there was no other position available for him to transfer to at the University.

According to Eldredge, Lock Haven University had a policy regarding severance benefits for furloughed employees. He alleges that Fiorentino advised him that was eligible to participate in the severance plan if he signed a release and settlement agreement as set forth in the policy. Eldredge attached to his complaint a copy of Fiorentino's letter, dated February 6, 2013, which reads:

> This letter is to inform you that effective April 5, 2013, you will be furloughed from the position of Director of Web Development at Lock Haven University due to the abolishment of your position.
> On October 6, 2011, the Board of Governors of the Pennsylvania State System of Higher Education adopted *Policy 2011-02; Nonrepresented Employee Severance Program.* The Policy has an effective date of July 1, 2011 and defines severance eligibility for nonrepresented employees who are furloughed due to job abolishment. The Board of Governors Policy is attached for your review. Pursuant to the Policy, the Office of the Chancellor issued *Procedures and Standards for University Operations regarding Nonrepresented Staff Reduction in Force and Severance Plan.*
> As a Lock Haven University of Pennsylvania nonrepresented staff member furloughed after July 1, 2011, you

are eligible to participate in this voluntary Severance Plan program. However, please note that all participants will be required to sign a release and settlement agreement as set forth in the Policy. Severance will be paid as a lump sum payment based on your number of years of credited service.

Attached for your review is a Release and Settlement Agreement for Severance for Abolished Positions. If you decide to participate in this voluntary program, you must review and sign the Settlement Agreement, and return it to me by March 23, 2013.

If you have questions regarding [the] voluntary Severance Plan, please contact Deana Hill, Associate Vice President for Human Resources at 570-484-2014.

*Doc. 1-1* at 6. Policy 2011-02, which Fiorentino referred to in and attached to his letter, provides in pertinent part that "[t]he Chancellor will establish and maintain a Severance Plan for nonrepresented employees based upon years of service," and that "[p]articipants will be required to sign a release and settlement agreement prepared by the PASSHE [Pennsylvania State System of Higher Education] Office of Legal Counsel." *Doc. 1-1* at 17.

Further, the Procedures and Standards, which Fiorentino referred to in his letter and which Eldredge attached to his complaint, is a document dated November 15, 2001 from the Office of the Chancellor of PASSHE titled "Procedure/Standard Number 2011-06 Nonrepresented Staff Reduction in Workforce and Severance Plan" ("Procedure/Standard Number 2011-06"). *Doc. 1-1* at 2-4. Procedure/ Standard Number 2011-06, which provides for a severance payment for furloughed employees and sets the amount of that payment based on

the number of years of service, states that "[a]ll nonrepresented employees who are furloughed on or after July 1, 2011, are eligible to participate in this voluntary Severance Plan." *Id.* Procedure/Standard Number 2011-06 provides for a severance payment of six weeks of base salary for an employee with 10 years of service but less than 15 years of service. *Doc. 1*-1 at 3. Thus, Eldredge, who alleges that he worked at Lock Haven University for 14 years, was eligible for a severance payment in the amount of six weeks of his base salary.

Procedure/Standard Number 2011-06 also provides that "[f]urloughed employees who participate in this program will be required to execute a release and settlement agreement prepared by the PASSHE Office of Legal Counsel, which releases all past and present claims against PASSHE, one or more of its Universities and its employees acting in their official capacity." *Doc. 1-1* at 3. Further, it provides that "[a]n abolished position shall not normally be recreated for at least two (2) years," but it also states that "[e]xceptions may be granted by the Chancellor or Chancellor's designee upon the recommendation of the University President." *Id.*

The release sent to Eldredge contained the following provision:

> As a material inducement to the University to enter into this Agreement, and for and in consideration of the terms expressed herein, employee for himself/herself, his/her heirs, executors, administrators, and assigns, does hereby unconditionally release and forever discharge the University, PASSHE, and the Commonwealth of Pennsylvania (the

4

> "Commonwealth"), and their officers, employees,
> representatives and agents, of and from any and all claims,
> charges, demands, rights, actions, and causes of actions of
> whatsoever nature, kind or character, in law or equity, whether
> known or unknown, which employee now has, may have, or
> claims to have, or which he/she, at any time heretofore, had or
> claims to have against the University, PASSHE and
> Commonwealth arising from or related to his/her employment
> by the University and his/her separation therefrom.

*Doc. 1-1* at 9. According to Eldredge, because the release could arguably be read to release future claims and because he was concerned about releasing any potential future claim if his position was reestablished within two years, he, through his counsel, requested that the University clarify that the release only released past and present claims. Counsel for the University refused that request. Eldredge alleges that, because the University refused to make any changes to the release, which he asserts was tendered in violation of the severance policy, he inserted the following language into the release: "This paragraph releases only past and present claims, as identified in Procedure 2011-6, Section III(C)." *Doc. 1-1* at 9.

Eldredge alleges that he tendered the modified release in a timely manner, but Deanna Hill noted on the release that "[t]he University's receipt of this release does not constitute acceptance of the release, as the employee has modified the agreement." *Doc. 1-1* at 23. According to Eldredge, Hill said that she would check whether the release was acceptable, and Hill later advised that the release was void

because it had been modified and, thus, the University would not accept it. Eldredge believes that Hill checked with Fiorentino and that Fiorentino made the decision not to accept the release.

The complaint contains three counts. Count One is a substantive due process claim. Count two is a breach of contract claim. And Count three is a claim under Pennsylvania's Wage Payment and Collection Law.

Fiorentino filed a motion to dismiss the complaint, and that motion has been fully briefed. For the reasons set forth below we recommend that the motion to dismiss be granted.

## III. Discussion.

Fiorentino contends that the complaint fails to state a substantive due process claim upon which relief can be granted because Eldredge did not have a property interest protected by substantive due process. He also contends that the complaint fails to state a substantive due process claim because Eldredge has not alleged facts leading to a reasonable inference that he was personally involved in the decision to reject the modified release. Fiorentino further contends that the breach of contract claim and the claim under Pennsylvania's Wage Payment and Collection Law are barred by sovereign immunity.

In his brief in opposition, Eldredge withdraws his breach of contract claim and the claim under Pennsylvania's Wage Payment and Collection Law. And he requests that his complaint be construed as raising a procedural due process claim or that he be allowed to amend his complaint to raise a procedural due process claim.

## A.  Motion to Dismiss and Pleading Standards.

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012).  With respect to the benchmark standard for legal sufficiency of a complaint, the United States Court of

Appeals for the Third Circuit has aptly noted the evolving standards governing

pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny,* 515 F.3d 224, 230 (3d Cir.2008)], and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a

'short and plain statement of the claim showing that the pleader is entitled to

relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The statement required by

Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and

of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

Detailed factual allegations are not required, but more is required than labels,

conclusions, and a formulaic recitation of the elements of a cause of action. *Bell

Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a

complaint must do more than allege the plaintiff's entitlement to relief." *Fowler,*

578 F.3d at 211. "A complaint has to "show" such an entitlement with its facts."

*Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

In conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal,* 556 U.S. at 679.

Thus, following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level

of mere speculation.  In practice, consideration of the legal sufficiency of a

complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead
> to state a claim.' Second, the court should identify allegations that,
> 'because they are no more than conclusions, are not entitled to the
> assumption of truth.'  Finally, 'where there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal,* 556

U.S. at 675 & 679).


### B.  The Complaint Fails to State a Substantive Due Process Claim Upon Which Relief Can Be Granted.

Count One of the complaint is a substantive due process claim.  The

Fourteenth Amendment provides that a state shall not "deprive any person of life,

liberty, or property, without due process of law."  The Due Process Clause has both

substantive and procedural components. *Evans v. Sec'y Pennsylvania Dep't of

Corr.*, 645 F.3d 650, 658 (3d Cir. 2011).  The substantive component limits what

the government may do regardless of the fairness of the procedures that it employs.

*Boyanowski v. Capital Area Intermediate Unit,* 215 F.3d 396, 399 (3d Cir. 2000).

"'[T]he core of the concept' of due process is 'protection against arbitrary action.'"

*Kaucher v. County of Bucks,* 455 F.3d 418, 425 (3d Cir. 2006)(quoting *County of

Sacramento v. Lewis,* 523 U.S. 833, 845 (1998)).  "To establish a substantive due

process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008).

To proceed on a substantive due process claim, the plaintiff must have "a protected property interest to which the Fourteenth Amendment's due process protection applies.'" *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000)(quoting *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118, 123 (3d Cir. 2000)). "The text of the Fourteenth Amendment speaks of 'property' without qualification, and it is well-settled that state-created property interests, including some contract rights, are entitled to protection under the procedural component of the Due Process Clause." *Id.* But not all property interests protected under the procedural component of the Due Process Clause are protected under the substantive component of the Due Process Clause. *Id.* "[T]o state a substantive due process claim, 'a plaintiff must have been deprived of a *particular quality* of property interest.'" *Id.*(emphasis in original)(quoting *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 598 (3d Cir.1995)). "[W]hether a certain property interest embodies this "particular quality" is not determined by reference to state law, but rather depends on whether that interest is "fundamental" under the United States Constitution." *Id.* The Third Circuit Court of Appeals has held that

ownership of real property is a fundamental property interest protected by the substantive component of the Due Process Clause, but it has "been reluctant to extend substantive due process protection to other, less fundamental property interests." *Id.* at 141. For example, it has held that tenured public employment is not a fundamental property interest protected by the substantive component of the Due Process Clause. *Id.* at 142.

In this case, Eldredge states in his brief that he is not claiming that he had a property interest in his employment, but rather he is claiming that he had a property right in the severance payment. But if tenured public employment is not a fundamental property interest protected by substantive due process, it necessarily follows that a state law entitlement to severance benefits is not a fundamental property interest protected by substantive due process. *Seacrist v. Skrepenak*, No. 3:07-CV-2116, 2009 WL 959640 at *7 (M.D.Pa. Apr. 6, 2009)(Caputo, J.)(holding that an alleged contractual right to a severance payment is not a fundamental property right under the United States Constitution warranting substantive due process protection). Accordingly, the complaint fails to state a substantive due process claim upon which relief can be granted.[1]

_____

[1] Since the complaint fails to state a substantive due process claim because Eldredge did not have a property interest protected by substantive due process, we need not address Fiorentino's argument that the complaint also fails to state a

**C. Eldredge Should Not Be Granted Leave to Amend the Complaint to Raise a Procedural Due Process Claim.**

Eldredge does not really present an argument that the complaint states a substantive due process claim. Rather, although Count One of the complaint is labeled and pleaded as a substantive due process claim, he asks the court to treat it as a procedural due process claim. In a footnote, he asserts that he seeks leave to amend the complaint "to include procedural due process to the extent the court determines that is required." *Doc. 14* at 7 n.1. It appears that Eldredge is asserting that he would plead the same facts as he already has, but he would label his claim as a procedural due process claim, instead of a substantive due process claim. Because Eldredge did not have a property interest protected by procedural due process in the severance payment, granting him leave to amend would be futile.

A due process claim requires a two-part analysis. First, the court must determine whether the interest asserted by the plaintiff is within the scope of protection of life, liberty, or property found in the Due Process Clause. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). Second, if the interest is one that is protected by the Due Process Clause, "the question then becomes what process is due to protect it." *Id.*

---

substantive due process claim because Eldredge has not alleged facts supporting an inference that he was personally involved in rejecting the modified release.

In this case, life and liberty are not implicated. Thus, the question is whether Eldredge had a property interest protected by procedural due process. For procedural due process, property interests are created and defined by "existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "Property interests are often expressly created by state statutes or regulations, but they can also arise from written or unwritten state or local government policies or from 'mutually explicit understandings' between a government employer and employee." *Stana v. Sch. Dist. of City of Pittsburgh*, 775 F.2d 122, 126 (3d Cir. 1985)(quoting *Perry v. Sindermann*, 408 U.S. 593, 601 (1972)). "Property, in the constitutional sense, is merely a label applied to a benefit when an individual possesses a 'legitimate entitlement' to it under 'existing rules or understandings.'" *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 316-17 (M.D. Pa. 2004)(quoting *O'Bannon v. Town Court Nursing Ctr.,* 447 U.S. 773, 779-80 (1980)). "Although the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978)(quoting *Roth,* 408 U.S. at 577).

"An abstract need or desire for" or "a unilateral expectation of" a benefit is insufficient to establish a property interest. *Roth,* 408 U.S. at 577. Rather, "to have a property interest in a benefit," a person must have "a legitimate claim of entitlement to it." *Id.* A person has a "legitimate entitlement" when he or she has "a presently enforceable right to control a benefit." *Pappas*, 331 F. Supp. 2d at 316. "'Legitimate entitlement' has been found most often in those benefits that the state has accorded in the past, and that the individual has a reasonable expectation will continue in the future." *Id.* at 317. A person who is already receiving a benefit generally has a reasonable expectation that the benefit will continue. *Id.* But the analysis is different when a person has not yet received a benefit.

> A materially different question is presented when the benefit has not yet commenced, and when a determination of entitlement has not yet been made. Contracts and statutes rarely accord an unqualified and immediate right to receive a benefit. Typically, the claimant must meet certain conditions as a prerequisite to receipt. The claimant secures an "enforceable right to control [the] benefit" only after the governing authority has made a threshold determination of satisfaction of these conditions.
>
> Until this determination is made, the Constitution does not view these benefits as property. Any benefit that has not commenced, and includes conditions on receipt not yet deemed satisfied, is not a benefit to which a person enjoys an immediate and legitimate right of entitlement. Fundamentally, it is the difference between *eligibility* and *entitlement.* The former means that the person has an ability to seek a benefit. The latter means that the person may now control it. And only the latter is constitutionally significant for purposes of "property."
>
> To hold otherwise would render every question of state contract and statutory interpretation a matter of constitutional

concern.  Compliance *vel non* with contractual or statutory conditions would become the threshold issue of due process analysis.  Federal courts would become embroiled in every contract dispute between states and their employees.  The Due Process Clause obviously does not compel such intrusion.  Not every alleged breach of a state contract is a due process claim.

Entitlement to a benefit, creating a "property" interest under the Due Process Clause, arises only when government has created an unqualified right to receive the benefit or when the appropriate authority has deemed conditions to receipt satisfied.  This principle ensures that constitutional questions will not be dependent on factual issues controlled by state law.  It also insulates federal courts from the threshold determination, properly considered by state authorities in the first instance, of whether an individual has satisfied conditions for receipt of the benefit.

. . .

Only when the individual has been deemed entitled to the benefit, either through receipt or through an independent determination by the appropriate authority, will the Constitution recognize the benefit as property.

*Id.* at 317-19 (citations omitted).

Applying these principles, Eldredge did not have a property interest in the severance payment.  He was not receiving severance payments.  Nor has the appropriate authority deemed him to have satisfied the condition to receipt of the severance payment.  The applicable policy and procedure expressly conditioned receipt of the severance payment on the execution of an appropriate release.  Policy 2011-02 provides that "[p]articipants will be required to sign a release and settlement agreement prepared by the PASSHE Office of Legal Counsel." *Doc. 1-1* at 17.  And Procedure/Standard Number 2011-06 provides that "[f]urloughed employees who participate in this program will be required to execute a release and

16

settlement agreement prepared by the PASSHE Office of Legal Counsel, which releases all past and present claims against PASSHE, one or more of its Universities and its employees acting in their official capacity." *Doc. 1-1* at 3. Fiorentino sent Eldredge a release prepared by PASSHE's Office of Legal Counsel. Although Eldredge signed the release, he modified its language, and, as a result, the University did not accept the release. Because the University did not deem Eldredge to have satisfied the condition attached to the severance payment of signing a release prepared by PASSHE's Office of Legal Counsel, for purposes of procedural due process, Eldredge does not have a present entitlement to the severance payment. Accordingly, the severance payment does not constitute a property interest protected by the procedural due process.

Eldredge suggests that the language that he added to the release did not materially change the meaning of the release, but rather it only clarified the language of the release to make it clear that he was releasing only past and present claims, not future claims. And so he asserts that he complied with the condition necessary to receive a severance payment. But the important point for purposes of procedural due process is that the appropriate authority has not deemed him to

have satisfied the condition. Whether he in fact satisfied the condition is a question for appropriate state authorities in the first instance.[2]

Our conclusion that Eldredge did not have a property interest in the severance payment is consistent with a decision by Judge Caputo in a case concerning a claim that a defendant was contractually bound to provide a severance payment to the plaintiff in that case. Judge Caputo observed that "[c]ourts differentiate between an employee's claimed property interest in an employment benefit and an interest in the employment itself." *Seacrist v. Skrepenak*, 3:07-CV-2116, 2009 WL 959640 at *4 (M.D. Pa. Apr. 6, 2009)(citing *Ramsey v. Bd. of Educ.,* 844 F.2d 1268, 1274–75 (6th Cir.1988) ("an interference with a property interest in a pure benefit [accumulated sick leave] of employment, as opposed to an interest in the tenured nature of the employment itself, is an interest that can be and should be redressed by a state breach of contract action and not by a federal action under section 1983")). Judge Caputo assumed without deciding that the plaintiff had a contractual right to the severance payment, but he reasoned that "it does not necessarily follow that such right is a protected property interest under the Fourteenth Amendment." *Id.* at *5. He noted that the Third

---

[2] Eldredge contends that he had a property interest in the severance payment rather than a property interest in a claim for the severance payment. *See Pappas,* 331 F. Supp. 2d at 320 (property includes "not only tangible assets but also claims to contractual performance and chose in action."). We, therefore, do not address whether he had property interest in a state law cause of action based on breach of the policy.

Circuit has recognized two general types of contract rights that constitute property interests protected by procedural due process:

> [T]he first type arises where the contract confers a protected status, such as those characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits. The second, albeit related type of property interest arises where the contract itself includes a provision that the state entity can terminate the contract only for cause.

*Id.* (quoting *Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1399 (3d Cir. 1991)). Judge Caputo then determined that the plaintiff's right to receive the payment fell into neither of those categories. *Id.* First, he determined that while the severance payment was undoubtedly important to the plaintiff, she did not show "a protected status characterized by extreme dependence or permanence." *Id.* In this regard, he found that there was no evidence that the severance payment was of the "same character as welfare benefits, wherein the recipient is dependent on continuation of the entitlement for 'day-to-day survival.'" *Id.* (quoting *Boyd v. Rockwood Area Sch. Dist.*, 105 F. App'x 382, 386 (3d Cir. 2004)). He also concluded that the one-time payment did not "demonstrate the permanence associated with tenured employment." *Id.* Second, Judge Caputo determined that the plaintiff had not shown that the early retirement plan that provided for the severance payment could be terminated only for cause. *Id.* Instead, the plan provided that it could be revoked at any time prior to December 1, 2005. *Id.* The

plan was silent as to whether it could be terminated between December 1, 2005 and

January 6, 2006, the date accepted participants were to receive payment, and it was

also silent as to termination after an application had been accepted by the County.

*Id.* Judge Caputo concluded that "[t]ermination during the period between

December 1, 2005 and January 6, 2006 would presumably give rise to a breach of

contract claim for Plan participants, but the record does not suggest that the County

was limited to termination for cause only." *Id.* Thus, according to Judge Caputo,

the plaintiff demonstrated "nothing that elevates her claim from an ordinary breach

of contract to a constitutionally protected property interest," and so he granted the

defendants' motion for summary judgment. *Id.*

Here, using the analysis that Judge Caputo used in *Seacrist,* Eldredge has not

alleged facts from which it reasonably can be inferred that he had a property

interest in the severance payment. He has not alleged facts suggesting a protected

status characterized by extreme dependence or permanence. Nor does it appear

that he could. Denial of the one-time severance payment of six weeks of base

salary cannot be equated to the discontinuance of welfare payments to a person

who is dependent on such payments for day-to-day survival. And the one-time

nature of the payment shows that there was no permanence involved. Moreover,

Eldredge has not alleged that the policy regarding the severance payment could be

revoked only for cause, and there is nothing in either Policy 2011-02 or

Procedure/Standard Number 2011-06 indicating that the policy could be revoked only for cause. Accordingly, applying the analysis used in *Seacrist,* Eldredge did not have a property interest protected by the procedural component of the Due Process Clause. *See also Phillips v. Bd. of Comm'rs. of Schuylkill Cnty.,* 3:CV-06-897, 2006 WL 2504026 (M.D. Pa. Aug. 28, 2006)(Kosik, J.)(dismissing due process claim based on denial of accumulated sick leave and severance pay upon retirement and stating that the interest in such payments "can be and should be redressed by a state breach of contract action and not a federal action under § 1983").

Because Eldredge did not have a property interest protected by the procedural component of the Due Process Clause, it would be futile to allow him to amend his complaint to include a procedural due process claim.

## IV. Recommendations.

Accordingly, for the foregoing reasons, it is recommended that the defendant's motion (doc. 4) to dismiss the complaint be granted and that the plaintiff not be granted leave to amend.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the

disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 13th day of January, 2014.


*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge